[Cite as *State ex rel. Noxious Vegetation Control v. Bur. of Workers' Comp.*, 2015-Ohio-5234.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State of Ohio ex rel.  :
Noxious Vegetation Control, Inc.,
 :
      Relator,
 :
v.  :             No. 14AP-51
 :
Ohio Bureau of Workers' Compensation,  :     (REGULAR CALENDAR)
 :
      Respondent.
 :

                :

D E C I S I O N

Rendered on December 15, 2015

*Isaac Wiles Burkholder & Teeter, LLC, J. Miles Gibson* and *Dale D. Cook*, for relator.

*Michael DeWine*, Attorney General, and *John R. Smart,* for respondent.

IN MANDAMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

BRUNNER, J.

{¶ 1} This is a decision in mandamus brought by relator, Noxious Vegetation Control, Inc. ("NOVCO"), seeking a writ of mandamus ordering respondent, Ohio Bureau of Workers' Compensation ("BWC"), to find BWC abused its discretion and to vacate its order finding that Total Utility Clearance, Inc. ("Total") was an unregistered Professional Employer Organization ("PEO") that held a relationship with NOVCO such that Total's assumption of much of NOVCO's workforce expenses and responsibilities (and leasing employees back to NOVCO) permitted NOVCO to avoid a higher risk rating, and thus, to avoid higher, unpaid BWC insurance premiums. Alternatively, if we find no abuse of

discretion by BWC, NOVCO requests that we limit BWC's retroactive premium increase for NOVCO to 24 months of premiums and that we order BWC to issue a new invoice to NOVCO, giving full credit for all premiums paid by Total.

{¶ 2}   We referred the matter to a magistrate pursuant to Civ.R. 53(C) and Loc.R. 13(M) of the Tenth District Court of Appeals.   The magistrate issued the appended decision, including findings of fact and conclusions of law, and recommended that this court deny the requested writ of mandamus.

## I.  FACTS AND PROCEDURAL HISTORY

{¶ 3}   In a related, previous mandamus action, we discussed the following relevant facts:

> [NOVCO], which has operated as an Ohio employer since 1960, is in the business of buying and selling chemicals and clearing rights of way for public utilities. Clarence E. Wissinger, an officer of NOVCO, testified that, as a result of its high workers' compensation premiums, NOVCO could not obtain profitable contracts with public utilities unless it utilized leased labor. Therefore, effective July 1, 2004, NOVCO terminated all 72 employees it utilized to perform labor for clearing rights of way under its public utilities contracts. Wissinger testified that Total Utility Clearance, Inc. ("Total") was created in 2004 for the sole purpose of supplying employee labor to NOVCO. Total and NOVCO share common ownership, but each separately reports payroll and pays workers' compensation premiums. Total hired 59 of the employees terminated by NOVCO and exclusively leases those employees to NOVCO to perform NOVCO's right-of-way jobs. NOVCO provides Total's only source of revenue. Wissinger, who is also an officer of Total, described NOVCO's payments to Total for labor as "just a wash-through; so payroll, workers' comp, et cetera." (Aug. 21, 2007, Tr. 16.) Total, itself, has no contracts with public utilities for clearing rights of way and owns no equipment for performing that work.

*State ex rel. V & A Risk Servs. v. Ohio Bur. of Workers' Comp.*, 10th Dist. No. 11AP-742, 2012-Ohio-3583, ¶ 5.

{¶ 4}   Total became a member of the Safety Council of Northwest Ohio ("Safety Council"), a BWC-approved sponsor of an employer group plan.  V & A Risk Services, ("V & A") is the designated third-party plan administrator for the group.  In 2007, BWC

conducted an audit of NOVCO and concluded that Total was a partial successor to NOVCO, resulting in the transfer of a portion of NOVCO's experience to Total, retroactive to 2004. As a result, Safety Council had its premiums re-rated causing a premium increase for the group in excess of $1.3 million over and above the amount already paid.

{¶ 5} Total objected to the transfer and requested a hearing before BWC's adjudicating committee. The adjudicating committee found that Total was not a successor employer to NOVCO, but upheld the transfer of a portion of NOVCO's experience because Total took over a portion of NOVCO's operations. The administrator's designee affirmed the transfer of experience and found the evidence did not demonstrate that Total is an unregistered PEO.

{¶ 6} V & A filed a complaint for mandamus relief in the Franklin County Court of Common Pleas, which held that BWC abused its discretion by finding that Total was not functioning as an unregistered PEO and by transferring NOVCO's experience to Total. On appeal to this court, we affirmed the judgment of the trial court and concluded that BWC abused its discretion by transferring NOVCO's experience rating to Total and that Total was an unregistered PEO. *See V & A Risk Servs.* Subsequently, BWC assigned the payroll to NOVCO, re-calculated premiums for the shared employees at NOVCO's rate, retroactive to 2004, and issued an invoice to NOVCO on November 12, 2o12 for $1,834,746.54.

{¶ 7} NOVCO filed an application for an adjudication hearing arguing that the invoice violated BWC's authority, because R.C. 4123.52 prohibits retroactivity beyond 24 months, and the invoice was retroactive to 2004. After a hearing, the adjudicating committee denied NOVCO's objection because NOVCO had misrepresented payroll. NOVCO appealed, and the administrator's designee affirmed the adjudicating committee. NOVCO thereafter filed this mandamus action.

{¶ 8} The magistrate found that BWC did not abuse its discretion when it concluded that Total was acting as an unregistered PEO and that both Total and NOVCO misrepresented to BWC their relationship for the sole purpose of allowing NOVCO to avoid its penalty rating and higher premiums, based on its (pre-Total) history. The magistrate concluded that BWC did not abuse its discretion in ordering NOVCO to pay for the differential in premiums as if the employees had remained with NOVCO the entire

period back to 2004 when Total was formed and the relationship between Total and NOVCO began. The magistrate deemed BWC's decision not to be an abuse of discretion when it ordered NOVCO to pay the differential between what Total paid and what NOVCO would have paid had the "wash" not occurred between them and they not misrepresented to BWC their relationship and resulting activities. The magistrate recommended that this court deny the requested writ of mandamus.

## II. OBJECTIONS

{¶ 9} NOVCO filed five objections to the magistrate's decision:

1. The Magistrate erred as the Bureau of Workers Compensation abused its discretion and committed a clear error of law in transferring Total's risk experience and claims experience to NOVCO in the absence of a successor relationship as defined by Ohio Revised Code §4123.32.

2. The Magistrate erred as the Bureau of Workers Compensation abused its discretion in retroactively applying the transfer all the way back to 2004 in violation of Ohio Revised Code §4123.52 and in the absence of any evidence of an intentional misrepresentation as to payroll.

3. The Magistrate erred as the Bureau of Workers' Compensation abused its discretion by not formally ruling that NOVCO is entitled to a credit for any premiums paid by Total.

4. The Magistrate's finding that NOVCO intentionally misrepresented payroll is against the manifest weight of the evidence.

5. The Magistrate's finding that NOVCO is not entitled to a set off for the premiums paid is against the manifest weight of the evidence.

## III. DISCUSSION

{¶ 10} A relator who seeks a writ of mandamus must establish (1) a clear legal right to the requested relief; (2) respondent has a clear legal duty to perform the requested act; and (3) relator has no plain and adequate remedy in the ordinary course of law. *State ex rel. Berger v. McMonagle*, 6 Ohio St.3d 28 (1983). A clear legal right to the requested relief in mandamus exists where the agency abuses its discretion by entering an order that

is not supported by some evidence. *State ex rel. Kolcinko v. Ohio Police & Fire Pension Fund*, 131 Ohio St.3d 111, 2012-Ohio-46, ¶ 2.

{¶ 11} For cogency of discussion of NOVCO's objections, we address the first two objections together. In its first and second objections, NOVCO contends the magistrate erred in failing to find that BWC "abused its discretion and committed a clear error of law in transferring Total's risk experience and claims experience to NOVCO in the absence of a successor relationship as defined by Ohio Revised Code §4123.32" and that BWC "abused its discretion in retroactively applying the transfer all the way back to 2004 in violation of Ohio Revised Code §4123.52 and in the absence of any evidence of an intentional misrepresentation as to payroll."

{¶ 12} NOVCO argues there was no evidence of a successor relationship between Total and NOVCO and that BWC erred when it transferred the claims experiences and the risk from Total to NOVCO. NOVCO's argument is misplaced, as it focuses on convincing this court that a successor relationship does not exist. The particular BWC order for which NOVCO seeks this court's application of an extraordinary writ does not find there to be a successor relationship, but rather, it is an order that assigns responsibility to the responsible party, NOVCO, for an unregistered PEO, Total. In the related mandamus action in *V & A Risk Servs.*, we already determined that Total's status was that of an unregistered PEO, and not that of a successor to NOVCO. Former Ohio Adm.Code 4123-17-15(C)(2), in effect at the time relevant to this dispute, provides as follows:

> Where a client employer enters into a PEO agreement: * * * [t]he PEO shall be considered the succeeding employer, *solely for purpose of workers' compensation experience*, and shall be subject to rule 4123-17-02 of the Administrative Code, basic or manual rate, whereby all or part of the experience of the client employer is transferred to the PEO policy *for rate making purposes.*

(Emphasis added.) The only relevance of "successor" status is for the determination of rates. Under this rule, NOVCO's rate would "succeed" to Total. When Total was found to be an unregistered PEO, its experience (and rate) would thus revert to be the responsibility of NOVCO, with whom it held the relationship, albeit unregistered. There being no other evidence or argument to examine BWC's order otherwise, we agree with the findings of the magistrate that Total was an unregistered PEO, not a successor.

{¶ 13} Former Ohio Adm.Code 4123-17-15(A)(1) provided that a PEO is a company "that enters into an agreement with one or more client employers for the purpose of coemploying all or part of the client employer's workforce at the client employer's work site."[1] Pursuant to former Ohio Adm.Code 4123-17-15(G), a PEO that operates in the state of Ohio must register annually with BWC. The PEO assumes responsibility for the payment of wages, taxes, and workers' compensation premiums for the shared employees. Ohio Adm.Code 4123-17-15(B)(2). Where a PEO fails to comply with the requirements of Ohio Adm.Code 4123-17-15, including the registration requirement, "the payroll of the shared employees shall be reported by the client employer [NOVCO] under its workers' compensation risk number for workers' compensation premium and claims purposes, unless prohibited by Federal law." Former Ohio Adm.Code 4123-17-15(E).

{¶ 14} The magistrate, in her findings of fact, found Total to be a PEO for NOVCO. We agree. Wissinger was an officer of both companies; the mail for Total came to his home; he admitted that, because of NOVCO's high workers' compensation premiums, it could not obtain profitable contracts with public utilities unless it utilized leased labor; Total was created in 2004 for the sole purpose of supplying employee labor to NOVCO; 59 employees from NOVCO went to work for Total; Total exclusively leases those employees to NOVCO to perform NOVCO's right-of-way jobs; NOVCO provides Total's only source of revenue; and Total has no contracts with public utilities for clearing rights of way.

{¶ 15} The magistrate concluded as a matter of law that, in cases where one acts for the sole purpose of evading one's responsibilities in an effort to gain a business advantage, BWC is entitled to consider the facts of the situation and has the discretion to act according to law. Former Ohio Adm.Code 4123-17-15(L) provided that BWC's "[a]dministrator may deny registration or revoke the registration of a PEO and rescind its status as a coemployer upon finding that the PEO has done any of the following: * * * (5) [f]ailed to comply with the requirements in accordance with this rule." Pursuant to former Ohio Adm.Code 4123-17-15(N), when PEO registration is revoked, each client employer is required to file payroll and workers' compensation premiums on its behalf at a rate determined by the administrator based solely on the claims experience of the client

---

[1] The relevant rule we reference, Ohio Adm.Code 4123-17-15 was that in effect at the time (effective November 22, 2004). It has since been revised, effective February 17, 2014.

employer. We agree with the magistrate's application of the law to the facts and find no abuse of discretion by BWC in its order, and we overrule NOVCO's first and second objections.

{¶ 16} We move to NOVCO's fourth objection. NOVCO argues that the magistrate's finding of an intentional misrepresentation regarding payroll is against the manifest weight of the evidence. We disagree. "Challenges to the manifest weight of the evidence present factual challenges to the magistrate's decision." *Black v. Columbus Sports Network, L.L.C.*, 10th Dist. No. 13AP-1025, 2014-Ohio-3607, ¶ 39. The record contains evidence of intentional misrepresentation which we have already thoroughly discussed. It would be a stretch of the imagination to find the relationship or the failure to disclose the PEO relationship to BWC to be unintentional. We overrule NOVCO's fourth objection.

{¶ 17} NOVCO's third and fifth objections concern the actual amount BWC ordered it must pay. NOVCO argues in its fifth objection that R.C. 4123.52 limits the retroactive application of awards to 24 months and therefore prohibits BWC from assigning to NOVCO the risk experience for these shared employees retrospective to 2004. Further, NOVCO argues in its third objection that the magistrate "erred as the Bureau of Workers' Compensation abused its discretion by not formally ruling that NOVCO is entitled to a credit for any premiums paid by Total."

{¶ 18} As to NOVCO's arguments in its fifth objection, for limiting BWC's claw back period to 24 months, R.C. 4123.52 is not applicable to NOVCO's circumstances. R.C. 4123.52 applies to the Industrial Commission of Ohio's continuing jurisdiction. BWC has authority pursuant to Ohio Adm.Code 4123-17-17(C) and 4123-17-28(C)(1)[2] to assign the risk to NOVCO retrospectively. Ordinarily, BWC's authority to increase an employer's premiums retroactively is limited to 24 months preceding the current payroll period. However, if BWC determines that the employer misrepresented payroll, it may make

---

[2] Former Ohio Adm.Code 4123-17-17(C) provided: "The bureau shall also have the right to make adjustments as to classifications, allocation of wage expenditures to classifications, amount of wage expenditures, premium rates or amount of premium." Former Ohio Adm.Code 4123-17-28(C) provided: "[T]he bureau may adjust the employer's account or experience for a period in excess of twenty-four months immediately prior to the beginning of the current payroll reporting period for the following circumstances: (1) If the bureau determines that the employer misrepresented payroll or failed to submit payroll for any period, the bureau may adjust the employer's account or experience resulting in an increase in any amount of premium above the amount of contributions made by the employer to the fund for the entire period the employer misrepresented payroll or the entire period the employer failed to submit payroll, regardless of when the misrepresentation of payroll or failure to submit payroll occurred."

adjustments for the entire period the employer misrepresented the payroll. We have already determined that the record supports the magistrate's finding that NOVCO misrepresented payroll. NOVCO's fifth objection is overruled.

{¶ 19} As to NOVCO's third objection, that the magistrate erred by not formally ruling that NOVCO is entitled to a credit for premiums paid by Total, the magistrate found just a single reference in the record of a $700,000 credit, appearing in the adjudicating committee's order, establishing an exact dollar amount of any credit. The magistrate concluded that the adjudicating order indicates that BWC would be crediting NOVCO with the premiums that Total paid, and there is no evidence that BWC no longer plans to do so. Accordingly, we conclude that the magistrate did not err in not finding that the administrator's designee abused its discretion in not ordering BWC to credit $700,000 to NOVCO.

{¶ 20} The adjudicating committee's order provides, as follows:

> At the hearing, the bureau representatives stated that a credit of approximately $700,000 representing the premiums that Total paid over this time period would be credited against the invoice. NOVCO stated, through its representative, that instead of receiving the credit it wants to be treated as a new company and not have the experience and payroll transferred back to NOVCO. There is no reason, or rationale, to treat Total as if it is a "new company" simply because it is a different legal entity.

The transcript of the proceedings for which the adjudicating committee issued its order following the February 21, 2013 hearing is not included in the stipulated record of NOVCO's application for a writ of mandamus. Nor is the transcript of the July 23, 2013 hearing before BWC's administrator's designee included. We can only consider what is in the record before us.

{¶ 21} Moreover, the magistrate found that NOVCO argued before the adjudicating committee that it did not want to receive the credit, but still argued BWC should recognize Total as a new company. In *State ex rel. Quarto Mining Co. v. Foreman*, 79 Ohio St.3d 78 (1997), the Supreme Court of Ohio found that the failure of the employer to have raised an issue administratively precluded the employer from arguing the issue in a mandamus action. The court stated that the rules regarding waiver "do not permit a party to sit idly by until he or she loses on one ground only to avail himself or herself of another on

appeal." *Id.* at 81. *See also State ex rel. Gibson* v. *Indus. Comm.*, 39 Ohio St.3d 319 (1988). Thus, the magistrate did not err in not formally ruling that NOVCO is entitled to a credit for premiums paid by Total.

{¶ 22} In Ohio Adm.Code 4123-17-17(C), BWC is given the authority to "make adjustments as to classifications, allocation of wage expenditures to classifications, amount of wage expenditures, premium rates or amount of premium." Ordinarily, it is presumed that state agencies will follow the law. *See State v. Heddleston*, 7th Dist. No. 98 CO 29 (Sept. 24, 2001), *abrogated on other grounds* by *State v. Bush*, 96 Ohio St.3d 235, 2002-Ohio-3993. BWC represented that it would provide a credit to NOVCO for the premiums paid by Total. Therefore, we expect that BWC will grant a proper invoice that reflects any credit that is due. We overrule NOVCO's third objection to the magistrate's decision.

## IV. CONCLUSION

{¶ 23} Upon review of the magistrate's decision, an independent review of the record pursuant to Civ.R. 53, and after due consideration of NOVCO's objections, we find the magistrate has properly determined the pertinent facts and applied the relevant law. We overrule NOVCO's five objections. Accordingly, we adopt the magistrate's findings of fact and conclusions of law as our own and deny NOVCO's request for a writ of mandamus.

*Objections overruled;*
*writ denied.*

TYACK and DORRIAN, JJ., concur.

_____

# APPENDIX

## IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

State of Ohio ex rel.                               :
Noxious Vegetation Control, Inc.,

                                                 :

        Relator,

                                                 :

v.                                                 No.  14AP-51

                                                 :

Ohio Bureau of Workers' Compensation,              (REGULAR CALENDAR)

                                                 :

        Respondent.

                                                 :

---

## M A G I S T R A T E ' S   D E C I S I O N

### Rendered on February 18, 2015

---

*Isaac Wiles Burkholder & Teeter, LLC, J. Miles Gibson* and *Dale D. Cook*, for relator.

*Michael DeWine*, Attorney General, and *John R. Smart,* for respondent.

---

### IN MANDAMUS

{¶ 24} Relator, Noxious Vegetation Control, Inc., ("NOVCO"), has filed this original action requesting that this court issue a writ of mandamus ordering respondent Ohio Bureau of Workers' Compensation ("BWC") to vacate its order finding that Total Utility Clearance, Inc. ("Total"), and NOVCO were in an unregistered Professional Employer Organization ("PEO") relationship and transferring Total's risk experience and claims experience to NOVCO or, in the alternative, should this court find that the transfer was not an abuse of discretion, NOVCO asks that the transfer be limited to two years

worth of premiums, and that the BWC should be instructed to issue a new invoice giving full credit for all premium payments made by Total.

Findings of Fact:

{¶ 25} 1. NOVCO, which has operated as an Ohio employer since 1960, is in the business of buying and selling chemicals and clearing rights of way for public utilities. Clarence E. Wissinger, an officer of NOVCO, testified that, as a result of its high workers' compensation premiums, NOVCO could not obtain profitable contracts with public utilities unless it utilized leased labor.  Therefore, effective July 1, 2004, NOVCO terminated all 72 employees it utilized to perform labor for clearing rights of way under its public utilities contracts. Wissinger testified that Total was created in 2004 for the sole purpose of supplying employee labor to NOVCO.  Total and NOVCO share common ownership, but each separately reports payroll and pays workers' compensation premiums. Total hired 59 of the employees terminated by NOVCO and exclusively leases those employees to NOVCO to perform NOVCO's right-of-way jobs. NOVCO provides Total's only source of revenue.  Wissinger, who is also an officer of Total, described NOVCO's payments to Total for labor as "just a wash-through; so payroll, workers' comp[ensation], et cetera."  * * * Total, itself, has no contracts with public utilities for clearing rights of way and owns no equipment for performing that work.

{¶ 26} 2. In 2007, a BWC audit of NOVCO concluded that Total was a partial successor to NOVCO and, as a result, transferred a portion of NOVCO's risk experience to Total and made the transfer retroactive to 2004.[3]  As a result, the group of which Total was a member had its premiums re-rated, resulting in a premium increase for the group in excess of 1.4 million.[4]

{¶ 27} 3. Total objected to the transfer and requested a hearing before BWC's adjudicating committee.  At the hearing, counsel for NOVCO and Total indicated that the issue was whether or not the audit findings were correct:  that Total was a succeeding

[3] BWC's authority to retroactively increase an employer's premiums is limited to 24 months preceding the current payroll period unless it determines that the employer misrepresented payroll or failed to submit payroll for any period, in which case it may make adjustments for the entire period the employer misrepresented payroll or failed to submit payroll.  Ohio Adm.Code 4123-17-17(C) and 4123-17-28(C)(1).
[4] In 2004, when Total became a member of the group, Total certified that it did not operate as an employee leasing company or a PEO and it agreed to notify the group of any material change in its operations.

interest to NOVCO. The parties stipulated that, if the BWC upheld the transfer, Total would agree to its removal from the group.

{¶ 28} 4. The adjudicating committee specifically found that Total was not a successor employer to NOVCO.

{¶ 29} 5. Despite finding that Total was not a successor employer to NOVCO, the adjudicating committee upheld the transfer of a portion of NOVCO's experience because the committee viewed "Novco's arrangement with Total as a form of labor leasing involving a completely captive new employer." Further, the committee determined that the BWC did not have authority to remove Total from the group after the applicable deadline found in Ohio Adm.Code 4123-17-62.

{¶ 30} 6. The administrator's designee adopted the statement of facts and affirmed the decision, findings and rationale of the adjudicating committee. As such, although the administrator's designee agreed that Total was not a successor employer to NOVCO, the administrator's designee nevertheless affirmed the transfer of the experience and also found that the evidence did not establish that Total was an unregistered PEO.

{¶ 31} 7. V&A Risk Services ("V&A") and Safety Council of Northwest Ohio ultimately filed a complaint for mandamus relief and this court concluded that the BWC abused its discretion by transferring NOVCO's experience rating to Total. However, this court also found that the BWC's interpretation of the relationship between NOVCO and Total was incorrect finding that Total was an unregistered PEO. Specifically, this court stated:

> NOVCO and Total are separate legal entities, despite their common ownership, and both report payroll and pay workers' compensation premiums. There is no evidence that NOVCO exercised control over Total or that the entities did not observe corporate formalities. The entities are sister companies, and, like the trial court, we conclude that BWC abused its discretion by determining that NOVCO could not be a "client" of Total for purposes of the regulatory definition of PEO. * * *
>
> Although the record contains no evidence of a written contract between NOVCO and Total, the evidence establishes that Total was created for the sole purpose of leasing employees to NOVCO, that Total did lease employees to

> NOVCO, and that NOVCO paid Total for the leased employees. * * *
>
> [The] BWC abused its discretion by concluding that Total was not functioning as an unregistered PEO and by transferring NOVCO's experience rating to Total.

*State ex rel. V&A Risk Services v. Ohio Bur. of Workers' Comp.,* 10th Dist. No. 11AP-742, 2012-Ohio-3583¶ 38-41.

{¶ 32} 8. Thereafter, the BWC assigned the payroll to NOVCO, recalculated the premiums for the shared employees at NOVCO's rate, retroactive to 2004, and issued an invoice to NOVCO on November 12, 2012 in the amount of $1,834,746.54.

{¶ 33} 9. NOVCO protested and filed an application for an adjudication hearing, arguing:

> The employer objects to the invoice dated November 12, 2012 in which it was billed $1,834,746.54 retro-active to July 1, 2004, invoice attached. This invoice violates the Bureau's authority pursuant to Ohio Revised Code Section 4123.52, which prohibits retro-active activity beyond two years. In addition, this decision is inconsistent with the Order of the Franklin County Court of Appeals dated August 9, 2012, State of Ohio ex rel. V&A Risk Services, et al., v. State of Ohio BWC et allowed * * *.

{¶ 34} 10. Following a hearing on February 21, 2013, the adjudicating committee issued a detailed 22-page decision setting forth its findings of fact and reasoning for its decision to deny NOVCO's objection.

{¶ 35} 11. The adjudicating committee denied NOVCO's protest, found that it was appropriate to bill NOVCO finding that there was an undisclosed PEO relationship between NOVCO and Total, and also that because NOVCO had misrepresented payroll, it was appropriate to bill NOVCO retroactive beyond the two-year provision of R.C. 4123.52. The committee explained:

> NOVCO has been in business since 1960 and has its physical location on Trabue Road here in Columbus. Mr. Wissinger explained to this Committee, just as he did to the Adjudicating Committee on August 21, 2007, that NOVCO's bids for public utility work were not going to be competitive or profitable due to higher rates. NOVCO had a number of claims and was penalty rated.

To solve this problem, in 2004, the officers of NOVCO formed Total to avoid the high premiums. Total represented on its formation documents filed with the Ohio Secretary of State that it was formed "To provide Tree removal and spraying services on Public Utility right of ways." Total then applied for workers' compensation coverage representing to the bureau on its policy application that its operations would entail "Utility right of way trimming and spraying," that there were no other workers' compensation policies associated with this operation, and that it did not purchase this business. Total then began reporting payroll in manual classifications 0050 and 0106. Total had no claims experience due to being treated as [a] new company. With no claims experience negatively affecting its rates in these manual classifications Total was accepted by a group sponsor into a group rating program. The officers of NOVCO quit reporting manual classifications 0050 and 0106 on NOVCO's policy and achieved the goal of avoiding the penalty rating associated with those manual classifications on NOVCO's policy. This continued until the bureau conducted an audit of NOVCO and Total in March of 2007.

* * *

At the Adjudicating Committee hearing held August 21, 2007, Mr. Wissinger testified that he formed Total to provide labor services to NOVCO and that NOVCO is the management company. The transcript of that 2007 hearing shows that Total does not do work for anybody but NOVCO, Total has no equipment of its own, the employees working in manuals 0050 and 0106 work out of the same location on Trabue [R]oad as they always have, all the trucks and equipment are housed on Trabue Road, Total's only source of revenue is NOVCO, and the labor that is performed by Total is done through contracts NOVCO obtained. When asked "how much NOVCO will pay [T]otal for use of leased employees" Mr. Wissinger testified the pay is "just a wash-through; so payroll, workers' comp[ensation], et cetera." The Adjudicating Committee viewed "Novco's arrangement with Total as a form of labor leasing involving a completely captive new employer" and found the transfer of experience from NOVCO to Total appropriate.

V&A Risk Services asked the Administrator's Designee to treat Total as an unregistered Professional Employer Organization (PEO). * * *

The Administrator's Designee declined V&A Risk Services['] request to treat Total as an unregistered Professional Employer Organization (PEO). V&A Risk Services challenged the decision in court. The trial Court and [C]ourt of [A]ppeals found that BWC must treat Total as an unregistered PEO. The court of appeals held:

"...we agree with the trial court that BWC abused its discretion by concluding that Total was not functioning as an unregistered PEO and by transferring NOVCO's experience rating to Total."

The invoice at issue was generated after complying with the court decision. The Committee finds the invoice is consistent with the court's decision. The experience and payroll reported to Total's policy was properly transferred back to NOVCO's policy as required by Ohio Adm.Code 4123-17-15(E). The invoice is simply the result of complying with the court's decision and correctly applying the applicable rules. Applying this rule is consistent with what NOVCO represented to the bureau at the prior hearings - that Total was formed with the purpose of leasing the employees back to NOVCO.

* * *

At the hearing, the bureau representatives stated that a credit of approximately $700,000 representing the premiums that Total paid over this time period would be credited against the invoice. NOVCO stated, through its representative, that instead of receiving the credit it wants to be treated as a new company and not have the experience and payroll transferred back to NOVCO. There is no reason, or rationale, to treat Total as if it is a "new company" simply because it is a different legal entity.

Total is a company formed by the same owners of NOVCO to lease employees back to NOVCO. However, instead of complying with applicable rules and informing the bureau of the "relationship" the common owner's [sic] of Total and NOVCO concealed it. The change to the employees was likely "by and large" transparent because the location of Total is the same as NOVCO and the mailing address for Total is Mr. Wissinger's personal residence. No documentary evidence was presented to this Committee to review. However, one can deduct from Mr. Wissinger's testimony that the only

thing that changed was the name on the paycheck to the employees. The employees continued showing up to work at the same location on Trabue Road as they always had [been] doing the same work. There is no evidence that Total ever actually properly operated as a labor leasing type of company.

With the benefit of hindsight, and the issue being litigated in court, it is evident the purpose of the formation of Total was misrepresented to the bureau on Total's policy application. Total's application states the primary services are "Utility right of way trimming and spraying." Everything on the policy application was answered to lead bureau personnel to believe it was a startup company. The "relationship" was not disclosed to V&A Risk Services either. Reviewing the formation documents available on the Ohio Secretary of State's website also would give no indication that Total was a labor leasing company. The result of washing payroll through Total without disclosing the "relationship" is that NOVCO evaded its penalty rating and its negative monetary effect until the bureau independently discovered it through an audit. The Committee declines to ignore the misrepresentations that were made and treat Total as if it were a "new company" that simply started operating.

### Time period of invoice

The invoice at issue covers the payroll periods dating back to 2004. NOVCO cited R.C. 4123.52 as authority that the bureau is prohibited from making decisions retroactive beyond two years. R.C. 4123.52 is not applicable here. That code section applies to the continuing jurisdiction of the Industrial Commission of Ohio and administrator with respect to a former finding or award in claims for disability, compensation and dependency. BWC's authority to retroactively increase an employer's premiums is limited to 24 months preceding the current payroll period *unless it determines that the employer misrepresented payroll* or failed to submit payroll for any period, in which case it may make adjustments for the entire period the employer misrepresented payroll or failed to submit payroll. Ohio Adm.Code 4123-17-17(C) and 4123-17-28(C)(1). The Committee finds payroll was misrepresented.

*This Committee declines to allow NOVCO to benefit from its misrepresentations.* What occurred here was a misrepresentation of payroll, but it was also more than that.

NOVCO created a new legal entity and "washed" payroll through it to evade high premiums. As discussed above, the "relationship" between NOVCO and Total was not disclosed to the bureau or V&A Risk Services who also relied on Total's misrepresentations. Had the common owners of Total and NOVCO followed the rules in presenting its payroll to the bureau for rate making purposes, it would not have avoided the "high premiums" caused by NOVCO's penalty rated experience. The Committee is cognizant that the balance owed is a large lump sum amount that covers a large time period. However, it should be kept in mind that the bureau audited both companies in March of 2007. NOVCO knew, or should have known, that if V&A Risk Services prevailed in its case this invoice would be generated dating back to the payroll period when NOVCO first manipulated its policy and penalty rating.

(Emphasis sic.) (Emphasis added.)

{¶ 36} 12. NOVCO appealed this decision and, in a final order mailed October 9, 2013, the administrator's designee affirmed the adjudicating committee.

{¶ 37} 13. Thereafter, NOVCO filed a mandamus action in this court.

Conclusions of Law:

{¶ 38} For the reasons that follow, it is this magistrate's decision that the BWC did not abuse its discretion when it concluded that Total was acting as an unregistered PEO and that both Total and NOVCO misrepresented to the BWC the relationship for the sole purpose of allowing NOVCO to avoid its penalty rating.  As such, the magistrate finds there was no abuse of discretion for the BWC to bill NOVCO for the entire amount and, because of the misrepresentation, the two-year limitations found in R.C. 4123.52 do not apply.

{¶ 39} The Supreme Court of Ohio has set forth three requirements which must be met in establishing a right to a writ of mandamus: (1) that relator has a clear legal right to the relief prayed for; (2) that respondent is under a clear legal duty to perform the act requested; and (3) that relator has no plain and adequate remedy in the ordinary course of the law. *State ex rel. Berger v. McMonagle*, 6 Ohio St.3d 28 (1983).

{¶ 40} First, relator contends that the BWC abused its discretion when it transferred Total's risk experience and claims experience to NOVCO in the absence of a successor relationship.  For the reasons that follow, the magistrate disagrees.

{¶ 41} It is undisputed that, where a successor relationship exists, it is proper to transfer risk and claims experience to the successor employer. In what could be called the normal course of events, this is the manner in which risk and claims experience is transferred from one employer to another. However, where, as here, steps are taken for the sole purpose of evading one's responsibilities in an effort to gain a business advantage, the BWC is entitled to consider the facts and the realities of a situation and has the discretion to act accordingly. Here, as both the BWC and this court found, Total was formed exclusively so that NOVCO could avoid its penalty rating and the financial effect that rating had on its business.

{¶ 42} A PEO is a company that enters into an agreement with one or more client employers with the purpose of co-employing all or part of the client employer's workforce. *See* Ohio Adm.Code 4123-17-15(A)(1). Pursuant to Ohio Adm.Code 4123-17-15(G), a PEO that operates in the state of Ohio must register annually with the BWC. Where a PEO relationship is properly registered, the BWC transfers the client employer's experience relative to the co-employed leased labor from the client employer's policy to the PEO's policy and the PEO assumes responsibility for the payment of wages, taxes, and workers' compensation premiums for the shared employees. However, when a PEO fails to comply with the requirements of the Administrative Code, the client employer, and not the PEO, retains the responsibility to report the payroll of the shared employees under its workers' compensation policy.

{¶ 43} Here, the BWC determined that Total qualified as a PEO and had a PEO relationship with NOVCO which it did not register. The sole purpose that Total was formed was to lease back employees to NOVCO. As the BWC found, Total's only client was NOVCO and Total "employed" former employees which NOVCO had terminated. Therefore, NOVCO and not Total, had the responsibility of reporting the payroll and paying the premiums for these shared employees. As the BWC found, this finding is consistent with this court's decision in *V&A Risk Services.* Here, the BWC's order is entirely consistent with this court's previous decision.

{¶ 44} NOVCO's final argument is that the BWC abused its discretion by not formally ruling that NOVCO is entitled to a credit for any premiums paid by Total. In this regard, the adjudicating committee order provides:

At the hearing, the bureau representatives stated that a credit of approximately $700,000 representing the premiums that Total paid over this time period would be credited against the invoice. NOVCO stated, through its representative, that instead of receiving the credit it wants to be treated as a new company and not have the experience and payroll transferred back to NOVCO. There is no reason, or rationale, to treat Total as if it is a "new company" simply because it is a different legal entity.

{¶ 45} NOVCO's argument here, in mandamus, is that the final order of the administrator's designee constitutes an abuse of discretion because the BWC was not ordered to credit $700,000 to NOVCO's bill. First, the magistrate notes that this paragraph from the adjudicating committee's order is the only place in the record where this $700,000 credit is mentioned. Second, there is no evidence in the record that would establish the exact dollar amount of any credit that may or not be applied. Third, as evidenced from this paragraph, at the hearing, NOVCO argued that it did not want to receive the credit, yet here, NOVCO argues that it was an abuse of discretion not to specify the credit. Fourth, as evidenced from this paragraph, the BWC indicated that it would be crediting NOVCO with the premiums that Total already paid and there is no evidence that would indicate that the BWC no longer plans to do what it said it was going to do.

{¶ 46} Finding that it was not an abuse of discretion for the BWC to find that NOVCO and Total misrepresented their PEO relationship, the magistrate finds that it was not an abuse of discretion for the BWC to order NOVCO to pay the premiums back to 2004 and the decision is consistent with this court's prior decision. As such, it is this magistrate's decision that NOVCO has not demonstrated that an abuse of discretion occurred and this court should deny NOVCO's request for a writ of mandamus.

/S/ MAGISTRATE
STEPHANIE BISCA

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).